ROGERS, J.
 

 The Interstate Electric Company, a domestic corporation, brought suit against the Radio Corporation of America, a nonresident corporation, for the recovery of $2,617.57, alleged to be the balance due on certain credit memoranda and invoices and for rebates growing out of a price reduction on radio products. Jurisdiction was obtained by attachment process. The defendant bonded the attachment, joined issue on .the merits, and reconvened for $2,315.73, which defendant alleged was transmitted to plaintiff to be distributed by it to its dealers, but which plaintiff retained. The court below awarded plaintiff judgment for $2,416.36, maintaining the attachment and dismissed the reeonventional demand. Defendant has appealed from the judgment.
 

 The record discloses that in marketing its products the Radio Corporation of America appoints distributors to whom it makes its sales. The distributors, in turn, sell to the dealers; and the dealers, in turn, sell to the consumers.
 

 In 1921 or 1922 the Interstate Electric Company, of New Orleans, became one of the distributors of the Radio Corporation of America. The business relations between the parties continued until May 1, 1925, when they ceased pursuant to a notice given to the Interstate Electric Company on March 17, 1925.
 

 On various occasions prior to January 1. 1925, the Radio Corporation of America, according to agreement, guaranteed the Interstate Electric Company, as one of its distributors, and its dealers against price reductions. These agreements, following the established policy of the Radio Corporation of America, were effectuated by telegrams containing .the guaranties for short periods. 'The record shows that this method of dealing with its distributors was adopted by th.e Radio Corporation of America, in lieu of extending them guaranties for longer periods, in order to protect and stabilize its prices.
 

 On January 31, 1925, the Radio Corporation of America sent telegrams to all its- distributors, including the Interstate Electric Company, guaranteeing price reductions up to July 1, 1925, on all radios and accessories which the distributors and their customers had on hand.
 

 
 *203
 
 A price reduction was also granted by the Radio Corporation on September 1, 1925, and, according to its usual practice, on November 21, 1925, it sent the Interstate Electric Company a check for $2,315.73 covering rebates for; that company’s dealers on radios and accessories remaining unsold in their stock as of date August 31, 1925, as certified by them.
 

 • The Interstate Electric Company contends that the price reduction effective September 1, 1925, applied to the stock it had on hand on that date, and therefore it was entitled to the rebates the Radio Corporation of America was allowing its distributors. The correctness vel non of this contention is the sole question presented for decision.
 

 The original claim of the Interstate Electric Company on these rebates was $4,432.08. On this alleged indebtedness it credited the Radio Corporation of America with the $2,-315.73 received for distribution among its dealers, leaving a balance of $2,116.35, which is set forth as one of the items of indebtedness for which judgment is sought in this suit.
 

 The Radio Corporation of America contends that the price reduction which it granted on September 1, 1925, was not applicable to the Interstate Electric Company, because that company prior to the reduction had ceased to be one of its distributors.
 

 The business relations between the plaintiff and defendant companies were severed on May 1, 1925. On June ,8, 1925, the Interstate Electric Company wrote the Radio Corporation of America that, not anticipating the severance of their business relations, it had accumulated a considerable stock, knowing that it would be protected against a decline in prices; that in all fairness it should be protected if a decline in prices took place; and, in order to know how it stood in the matter, it requested an early reply. The Radio Corporation answered this letter under date of June 12, 1925, stating, in substance, that its price guaranty was declared up to and including July 1, 1926; that the Interstate Electric Company had been given ample notice of the severance of business relation's, and had sufficient time to dispose of its stock; and that the Radio Corporation of America could not agree with the Interstate Electric Company that it was entitled to protection on its inventory after July 1, 1925, should there be a decline in prices.
 

 The Interstate Electric Company did not acquiesce in the position taken by the Radio Corporation of America. On receipt of that company’s letter of November 21, 1925, and the check for $2,315.73 which accompanied it, the president of the Interstate Electric Company, as shown by his testimony, wrote the Radio Corporation of America, notifying it that the check represented only a part of the amount due, and that in accordance with their agreement and practice, as soon as his company received a check for the difference in price of the stock on hand, it would distribute the proceeds of the check, together with the additional amount needed, to their dealers.
 

 The Radio Corporation of America then addressed letters to all the dealers who had purchased their stock- from the Interstate Electric Company, in which it defined its position as follows, viz.:
 

 “In notifying the trade' of the reduction in suggested list price, the RCA agreed to pro
 
 *205
 
 tect the distributor on his new and unsold stock on hand as of August 31st. The distributor in turn was to secure an affidavit from the dealer for his' new and unsold stock on hand as of August 31st., which after check by the distributor, was to be forwarded to the RCA and we would issue merchandise «credit to the distributor from whom purchase was made, the distributor in turn to ■protect the dealers.
 

 “Your affidavit covering stock on hand was .submitted to us thru the Interstate Electric Company of New Orleans, and in accordance with the conditions of the rebate, a credit was issued to the Interstate Electric Company for your stock on hand as certified in the affidavit. This rebate' was made to the Interstate Company on November 30th. Accordingly, the matter now rests between your company and ,the Interstate 'Company, to whom we have made rebate covering your affidavit.”
 

 Our conclusion is that the defendant’s guaranty against the decline in prices of its goods was indivisible. It must stand or fall as a whole. It cannot be valid so far as it requires the distributors to pay their dealers •■an amount equivalent to the reduction in prices and invalid so far as it requires the Radio Corporation of America to pay an amount equivalent to the reduction in price to its distributors. This conclusion is supported, not only by nature of the agreement, hut also by the position assumed by defendant ,in the letters which it wrote to the plaintiff’s •■dealers, an extract from one of which letters Is hereinabove quoted. In this letter, plaintiff’s dealers were expressly notified that the ■credit was issued to the Interstate Electric ¡Company for their stock on hand “in accordanee with the conditions of the rebate” ; thus disclosing plaintiff’s own understanding that, in the event of a decline in prices, it was a condition precedent of plaintiff’s paying its dealers that defendant should pay plaintiff. The Radio Corporation of America was to deal directly with the Interstate Electric Company, and that company, in turn, was to deal directly with its own customers. The record shows that the amount accruing to the dealers of the Interstate Electric Company under the price reduction declared by the Radio Corporation of America on September 1, 1925, imposed the burden upon the Interstate Electric Company of paying its dealers approximately 23 per cent, more than $2,315.73, the remittance received by it for that purpose.
 

 It seems plain to us that, while the business relations between the plaintiff and defendant companies were severed as of date May 1, 1931, the severance applied only to their future relations, and had no application whatever to, the rights and obligations growing out of their past relations. Plaintiff remained a distributor of defendant’s goods, so long as it had any of those goods to distribute. As such distributor it was entitled to all the benefits of the agreement by virtue of which the relation was established.
 

 In view of the conclusion we have reached and expressed on the main demand, we do not find any merit in the reconventional demand.
 

 The judgment of the court below was made up of two items, namely, an admitted indebtedness of $300 and $2,116.35, representing the difference claimed by plaintiff under its
 
 *207
 
 agreement with, defendant and the amount of $2,315.73 remitted by defendant to plaintiff. In rendering the judgment, the court overlooked a credit of $99.21 due the defendant, which credit accrued subsequent to the filing of the suit. The judgment will have to be amended accordingly.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the principal amount thereof from $2,416.35 to $2,-317.14, ánd, as thus amended, it is affirmed; defendant and appellant to pay th'e costs of appeal.